**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

UNITED STATES OF AMERICA          :

        v                                    :        Criminal Case No. L-10-0195

JOSEPH GASQUE          :

    Defendant          :

o0o
## **MEMORANDUM**

Joseph Gasque is charged by indictment with three counts: (i) conspiracy to possess and distribute both crack and powder cocaine; (ii) distribution and possession with intent to distribute powder cocaine; and (iii) distribution and possession with intent to distribute crack cocaine; each in violation of 21 USC §841(a)(1). A trial in the matter is currently set for January 24–28, 2011.

The trial will center on the events of two dates, December 3, 2007 and December 27, 2007, on which the Government alleges that Mr. Gasque was involved, directly or indirectly, in drug transactions.[1]

Mr. Gasque has filed a motion to suppress statements and physical evidence obtained by police during the events of December 3rd, alleging that any evidence was obtained in violation of his Fourth Amendment rights. On December 14, 2010, the Court held a hearing on the Motion, and stated its ruling that, because there was probable cause for Mr. Gasque's arrest, his constitutional rights were not infringed and the evidence put forth by the Government is admissible against him at trial. The Court now writes to explain its reasoning in greater detail.

---

[1] Though the events in question took place in 2007, pending state charges delayed Mr. Gasque's federal indictment until April 20, 2010.

1

At the hearing, the Government called as witnesses two Baltimore City police officers involved in Mr. Gasque's December 3rd surveillance and apprehension. Detective Hassan Rasheed is a ten-year veteran of the Baltimore police, and has taken part in over 1000 drug arrests. Det. Rasheed, while on his way to work that morning, observed what he believed to be drug transactions at the intersection of St. Charles and Belvedere Avenues in northwest Baltimore. He obtained the permission of his unit and returned to the area, where he surveilled Mr. Gasque and others. Detective Jonathan Riker, another Baltimore police officer of similar experience and training, was later radioed by Det. Rasheed and, at Rasheed's direction, stopped and arrested Mr. Gasque.

Mr. Gasque presented no evidence of his own and, after being advised of his rights by both his attorney and the Court, declined to testify.

The facts were fully developed at the hearing. Det. Rasheed testified that he parked in an unmarked car across Belvedere Ave. from St. Charles, in what he knows to be a high-crime area. Mr. Gasque and a man named Norris Conley stood on opposite sides of St. Charles, Mr. Gasque in front of a barber shop with which the Court understands that he is connected, as owner or otherwise. Mr. Gasque was known to Det. Rasheed as being involved with the drug trade in the area, and Rasheed was aware of Gasque's prior drug arrests.

Conley was constantly looking around the area in what appeared to Rasheed to be "counter-surveillance," and whenever a marked police car would approach, Conley would put his head down and begin to walk away, returning immediately when the police car was gone.[2] Det. Rasheed testified that he observed three unidentified individuals approach Conley and give him

---

[2] Det. Rasheed testified that the location of his surveillance was a mere one and a half blocks from the police station, and the volume of marked cruisers in the area was therefore considerable.

cash, whereupon Conley would walk around the corner, return, and give the individual small objects. In Det. Rasheed's experience, these were hand-to-hand narcotics transactions.

Rasheed notified other officers that the next buyer should be arrested. Milton Jessup, after engaging in a similar transaction with Conley, was allowed to leave the immediate area and then apprehended. In Jessup's possession was a yellow zip-top bag containing suspected crack cocaine. Det. Rasheed was informed by radio of these developments.

As Det. Rasheed continued to watch, Conley crossed St. Charles Ave. and, without a word, handed Mr. Gasque a quantity of US currency, then returned to his prior position. According to Det. Rasheed's knowledge, training, and experience, those who run street-level drug operations generally do not engage in transactions themselves, but rather observe the activity and collect the proceeds.

At this point a taxi arrived. A woman got out with something apparently clenched in her right fist, and without speaking she and Mr. Gasque both quickly walked to a Volvo parked in front of the barber shop, climbed in, and drove away. Det. Rasheed radioed Det. Riker and told him to stop the car and arrest Mr. Gasque.

Det. Riker testified that he and Sgt. Marjorie German stopped the car, and Riker asked Gasque to step out. He did so, and Riker conducted a very brief pat-down of Gasque's waist area to ensure that he was not armed. Riker then began to walk Gasque to the space between the Volvo and the police car, where he intended a more thorough search for weapons. At that moment, Riker saw a small zip-top bag fall out of Gasque's pants leg. Upon seeing it fall, and without questioning or prompting from Riker, Gasque immediately stated that "she just got in the car with it so I put it in my pants." The bag contained 20 red-top vials of suspected cocaine.[3]

---

[3] There was also hearsay testimony that, when searched at the police station, Mr. Gasque had some $288. At trial the Government will need to establish this fact through non-hearsay evidence.

3

Mr. Gasque contends that he was under arrest at the time the drugs fell from his pants and he made the statement, an arrest for which no probable cause existed. He points out that he had a legitimate reason to be in front of the barber shop, that Det. Rasheed never saw him involved in any drug transaction or handling any item that might have been a cocaine vial, and that, unlike Conley, he did not appear to be acting suspiciously at all. The Government argues that, while he was surely seconds away from being arrested, Mr. Gasque was merely detained under the rubric of *Terry v. Ohio* when the drugs fell from his pants, and therefore only reasonable articulable suspicion is required. The Government also maintains that, if Mr. Gasque was indeed arrested, it can still meet the higher burden of showing probable cause.

The Court finds that there was probable cause for Mr. Gasque's arrest at the time Det. Rasheed told Det. Riker to stop Gasque's car. Thus, the Court need not decide whether Mr. Gasque was under custodial arrest or merely detained. A warrantless arrest is permitted where there is probable cause, based upon the totality of the circumstances, to believe a felony is being or has been committed. *Illinois v. Gates*, 462 U.S. 213, 230–31 (1983). The Fourth Circuit defines probable cause as "facts and circumstances within the officer's knowledge [which] would warrant the belief of a prudent person that the arrestee had committed or was committing an offense." *United States v. Manbeck*, 744 F.2d 360, 376 (4th Cir. 1984). Potentially relevant factors include the officer's practical experience and inferences he may draw from it, the context of a high-crime area, and seemingly innocent activity that becomes sinister when considered in light of surrounding circumstances. *United States v. Humphries*, 372 F.3d 653, 657 (4th Cir. 2004).

From one perspective, Mr. Gasque's actions might indeed appear unobjectionable. He merely stood on the corner in front of his business, received money from another person for

reasons unknown, and when a woman arrived, he departed with her. However, this behavior must be viewed in the context of the surrounding circumstances, and through the lens of Det. Rasheed's training and experience. Doing so, the Court finds that a prudent person would be warranted in believing that Mr. Gasque had been involved in the commission of a crime.

The activity on the corner appeared to Rasheed to be a drug trafficking operation. This conclusion was validated when one of the customers was arrested and found in possession of cocaine. Pursuant to what appears to have been a prior arrangement requiring no communication, Mr. Gasque then received cash from Conley, presumably the proceeds of the earlier transactions. The high-crime nature of the area and Mr. Gasque's prior drug involvement were known to Det. Rasheed, and Det. Rasheed testified that in his experience, the person in charge of a street-level drug operation does not typically take part in the transactions, but rather supervises others and receives the proceeds. When viewed in this context, Mr. Gasque's involvement was entirely consistent with participation in narcotics trafficking, and his actions up to this point were sufficient to provide Det. Rasheed with probable cause for an arrest.

Probable cause was further bolstered by the arrival of the woman, and her departure with Mr. Gasque in a brisk and wordless manner reminiscent of Gasque's transaction with Conley. Though Det. Rasheed did not know what was afoot, the events were surely suspicious.

Because probable cause existed at the time Riker stopped Gasque's car, the suspected cocaine seized after falling from Mr. Gasque's pants leg is admissible. Furthermore, the evidence indicates that Mr. Gasque's ensuing statement was volunteered and voluntarily given, and, therefore, it is also admissible.

Dated this 16th day of December, 2010

/s/

reasons unknown, and when a woman arrived, he departed with her. However, this behavior must be viewed in the context of the surrounding circumstances, and through the lens of Det. Rasheed's training and experience. Doing so, the Court finds that a prudent person would be warranted in believing that Mr. Gasque had been involved in the commission of a crime.

The activity on the corner appeared to Rasheed to be a drug trafficking operation. This conclusion was validated when one of the customers was arrested and found in possession of cocaine. Pursuant to what appears to have been a prior arrangement requiring no communication, Mr. Gasque then received cash from Conley, presumably the proceeds of the earlier transactions. The high-crime nature of the area and Mr. Gasque's prior drug involvement were known to Det. Rasheed, and Det. Rasheed testified that in his experience, the person in charge of a street-level drug operation does not typically take part in the transactions, but rather supervises others and receives the proceeds. When viewed in this context, Mr. Gasque's involvement was entirely consistent with participation in narcotics trafficking, and his actions up to this point were sufficient to provide Det. Rasheed with probable cause for an arrest.

Probable cause was further bolstered by the arrival of the woman, and her departure with Mr. Gasque in a brisk and wordless manner reminiscent of Gasque's transaction with Conley. Though Det. Rasheed did not know what was afoot, the events were surely suspicious.

Because probable cause existed at the time Riker stopped Gasque's car, the suspected cocaine seized after falling from Mr. Gasque's pants leg is admissible. Furthermore, the evidence indicates that Mr. Gasque's ensuing statement was volunteered and voluntarily given, and, therefore, it is also admissible.

Dated this 16th day of December, 2010

/s/

_____
Benson Everett Legg
United States District Judge